IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LORI BRITTAIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-23-425-STE |
| | ) |
| MARTIN O'MALLEY, Commissioner of | ) |
| the Social Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

## I. PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration (SSA) denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative

---

[1] Martin O'Malley, as Commissioner of the Social Security Administration, is substituted as Defendant in this suit. *See* Fed. R. Civ. P. 25(d).

Law Judge (ALJ) issued an unfavorable decision on December 20, 2022. (TR. 14-31). The Appeals Council denied Plaintiff's request for review. (TR. 1-6). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 10, 2021, the alleged onset date. (TR. 17). At step two, the ALJ determined that Ms. Brittain had the following severe impairments: systemic lupus erythematous, rheumatoid arthritis, fibromyalgia, chronic pain syndrome, wedge compression fracture of first lumbar vertebra, degenerative disc disease, obesity, bilateral carpal tunnel syndrome, bilateral primary osteoarthritis of the hip, bilateral trochanteric bursitis, bilateral hand osteoarthritis, pleural effusion, interstitial pulmonary disease, hypertension, hypothyroidism, depression, and anxiety.[2] (TR. 17). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 17).

At step four, the ALJ concluded that Ms. Brittain retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: occasional ladders, ropes, or scaffolds; occasional ramps or stairs; occasional balancing; occasional stooping; occasional kneeling;

---

[2] The ALJ also found Plaintiff's restless leg syndrome was not severe. (TR. 73).

2

> occasional crouching; occasional crawling; frequent bilateral gross and fine manipulation; frequent exposure to extreme cold; and frequent use of moving mechanical parts an exposure to unprotected heights. The claimant is limited to simple and repetitive tasks in a routine work setting, performed in a work environment with no assembly line work or work that requires hourly quotas, involving only simple work-related decisions and infrequent and gradual workplace changes, with occasional interaction with the public and occasional interaction with coworkers and supervisors.

(TR. 22).

With this RFC, the ALJ concluded that Plaintiff could not perform her past relevant work. (TR. 27). Thus, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 47-48). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles that Plaintiff could perform. (TR. 48). The ALJ then adopted the VE's testimony and concluded, at step five, that Ms. Brittain was not disabled based on her ability to perform the identified jobs. (TR. 28-31).

### III.   ISSUE PRESENTED

On appeal, Ms. Brittain alleges the ALJ did not properly consider the limiting effects of her alleged symptoms. (ECF No. 11:3-15).

### IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence standard," a court looks to an existing administrative record to determine whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*,

139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.   THE ALJ'S EVALUATION OF PLAINTIFF'S SUBJECTIVE ALLEGATIONS

### A.   ALJ's Duty to Evaluate Plaintiff's Subjective Allegations

An ALJ evaluates a claimant's subjective allegations under a two-step framework. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016) & 20 C.F.R. §§ 404.1529 & 416.929. First, the ALJ must make a threshold determination regarding whether there is an "underlying medically determinable physical or mental impairment(s) from an acceptable medical source which could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2016 WL 119029, at *2; 20 C.F.R. §§ 404.1529(a), (b) & 416.929(a), (b). Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit an individual's ability to perform work-related activities. SSR 16-3p, 2016 WL 119029, at *2; 20 C.F.R. §§ 404.1529(c) & 416.929(c). At this second step, the ALJ will examine the objective medical evidence, the claimant's statements regarding her symptoms, information from medical sources, medical opinions, and "any other relevant evidence" in the record. SSR 16-3p, 2016 WL 119029, at *4; 20 C.F.R. §§ 404.1529(a), (c), (d) & 416.929(a), (c), (d). The

4

regulations and SSR 16-3p also direct the ALJ to consider the following seven factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms:

- Daily activities;
- The location, duration, frequency, and intensity of pain or other symptoms;
- Factors that precipitate and aggravate the symptoms;
- The type, dosage, effectiveness, and side effects of any medication;
- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
- Any measures other than treatment a claimant has used to relieve pain or other symptoms; and
- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2016 WL 119029, at *7; 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3). Finally, in evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. SSR 16-3p, 2016 WL 119029, at *9.

### B. Plaintiff's Alleged Limitations and the ALJ's Consideration

At the hearing, Plaintiff testified her lupus, rheumatoid arthritis, back problems, and various aches and pains prevented her from working. (TR. 43, 46). She asserted injections and physical therapy did not help her conditions. (TR. 43). She took Norco and Flexeril for her back pain and Sulfasalazine for lupus. (TR. 44). Despite her medication, she still had flareups once or twice a week and needed to remain in bed. (TR. 44-45).

5

She relied on her daughter-in-law to prepare meals and clean the house. (TR. 45-46). She quit her part-time job in 2022 because it was hard to use her hands and she had a "burning sensation" go through her back when she used her hands "constantly." (TR. 43).

In a function report, Plaintiff stated she had difficulty buttoning her clothes, but she could fold her clothes. (TR. 298-299). She walked around her yard for five minutes for exercise and could walk a half block before needing a five-to-ten minute rest. (TR. 300, 302). She went grocery shopping weekly. (TR. 300). She could not lift due to her back pain and could not walk far due to pain in her knees and hips. (TR. 302). She stated she used a wheelchair when her feet flared up and wore a brace daily. (TR. 303).

The ALJ addressed the testimony as follows:

> The claimant, through her testimony and written statements, alleges limitations secondary to the symptoms of physical impairments, including lupus and rheumatoid arthritis, such as back and hip pain, joint pain and stiffness, swelling, and fatigue. Specifically, she reported she has difficulty lifting, standing, walking, squatting, bending, kneeling, climbing stairs and using her hands. Furthermore, the claimant stated that she experiences weekly flare ups of her lupus or rheumatoid arthritis, which could cause her to stay in bed for two to three days. Additionally, the claimant alleges symptoms of mental conditions, including anxiety, such as difficulty with concentration, completing tasks, getting along with others, and handling stress. As for treatment, the claimant reported she attended physical therapy, received injections, attends counseling, and takes medication, such as Norco Flexeril, Cymbalta, and Abilify. Overall, the claimant alleges her physical and mental impairments interfere with her ability to work and carry out her activities of daily living.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(TR. 23) (internal citations omitted). The ALJ then summarized and cited various portions of the record to substantiate his finding. (TR. 23-27).

### C. The ALJ Did Not Commit Reversible Error in the Symptom Analysis

Plaintiff contends the ALJ erred in his consideration of Plaintiff's alleged symptoms. (ECF No. 11:6-15). Specifically, Plaintiff contends her impairments cause limitations greater than those contained in the RFC. She contends she cannot: (1) "consistently maintain a full-time work schedule without engaging in excessive off-task behaviors and/or absenteeism" because she has to lie down to manage pain from a lupus flare; (2) stand or walk for six hours during an eight-hour workday; or (3) engage in frequent reaching and handling. (ECF No. 11:7).

In support of this contention, Plaintiff first argues that her "statements describe greater limitations than the ALJ's RFC and establish that she is 'disabled.'" (ECF No. 11:6). But a claimant's statements regarding her symptoms cannot establish disability. *See* 20 C.F.R. §§ 404.1529(a) & 416.929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."). Instead, as addressed above, the ALJ engages in a two-step process to evaluate a claimant's subjective complaints.

Plaintiff next contests the reasonableness of the ALJ's conclusion that Plaintiff's statements regarding her symptoms were not entirely consistent with the medical evidence in the record. (ECF No. 11:8-12). In support, Plaintiff presents a summary of various medical records spanning 2021 and 2022. She directs the Court to portions of

7

those records in which she reported various symptoms to medical providers over the two-year period, including: pain; fatigue; stiffness; mouth sores; swelling and tenderness in her wrist, thumb, and right foot; dizziness; malaise; shortness of breath; and numbness in her hands when she writes or uses a computer. (TR. 534-537; 642; 646; 649; 724-725; 886-887; 939; 1327, 1330, 1334; 1339; 1351-1353). Plaintiff additionally recites records addressing her own assessment of her functional abilities, including: an inability to stand or sit for longer than one hour without pain; an inability to be on her feet for more than short periods of time; difficulty walking and needing a wheelchair after a March 2021 lupus flare; an inability to hold objects because her hands went numb and she dropped things; sore wrists with pushing and lifting; and needing a gripping device to open jar lids and bottle caps. (TR. 1092, 1403-1410, 1556-1557, 1623-1625). Plaintiff also noted examination findings and imaging studies which showed: bilateral tenderness to her shoulders, elbows, wrists, finger joints, hips, knees, ankles, and toes; bilateral swelling to her wrists, fingers, and ankles; a tender point count of 18/18; limping gait; joint effusion and heat with crepitus; finger swelling; tender points with reduced range of motion throughout her spine; moderate-to-marked joint space narrowing diffusely in her finger joints; and moderate bilateral joint space narrowing of the wrists with swelling. (TR. 539-540; 724-725; 1408). Further, Plaintiff addressed records regarding her treatment regimen, including: prescription medicine; use of a TENS unit; injections in her thoracic spine and hip; and a recommendation to use wrist splints. (TR. 638-640, 961-962, 1337, 1345-1349, 1403-1410, 1556-1557, 1623-1625).

The ALJ, however, considered Plaintiff's report of symptoms to her medical providers, the results of imaging studies, diagnoses made by medical providers, abnormalities noted in the medical record, the results of physical examinations, and the type of treatment she received for her impairments. (TR. 23-25). The ALJ addressed much of the evidence cited by Plaintiff in her brief as well as other, less-favorable evidence Plaintiff did not discuss. Thus, the Court rejects Plaintiff's general argument that the record supported greater limitations because it is nothing more than an attempt to re-weigh the evidence in her favor, which the Court cannot do. *See Vigil*, 805 F.3d at 1201 (noting the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency.") (internal quotation marks omitted).

Plaintiff's more specific arguments fare no better. Plaintiff contends the ALJ's recitation of the facts is "highly selective." (ECF No. 11:13). The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). Instead, the ALJ must only "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." *Id.* at 1010. Plaintiff first asserts the ALJ erred in discussing an x-ray of her hands and fingers. The ALJ wrote that "imaging studies showed . . . joint space narrowing in the hands and wrists." (TR. 23). Plaintiff contends the ALJ failed to note that the joint space narrowing was moderate-to-severe in the fingers and moderate in the wrists. (ECF No. 11:13) (citing TR. 1408). Although the ALJ did not include this detail, the Court finds the ALJ did not err because he considered and discussed the report and did not make any misrepresentations regarding

9

its contents. Second, Plaintiff contends the ALJ failed to reference that she was auto-antibody positive. (ECF No. 11:14). Plaintiff does not explain why this evidence is probative, but she explains earlier in her brief that a positive result "is commonly seen in patients with systemic lupus." (ECF No. 11:9, n.14). To the extent the result is probative because it is an indicator of lupus, the ALJ's failure to discuss the result is harmless because the ALJ found systemic lupus erythematous was a severe impairment. (TR. 17).

Plaintiff also contends some of the ALJ's findings were "patently incorrect." (ECF No. 11:13). Specifically, she asserts the ALJ "simultaneously found no evidence of joint or muscle tenderness in the record but also acknowledged that the record demonstrated several reports of 'tenderness over the shoulders, elbows, wrists, hands, hips, knees, ankles, and feet.'" (ECF No. 11:13) (quoting TR. 23). The ALJ noted that "while treatment notes noted some abnormalities, such as . . . tenderness over the shoulders, elbows, wrists, hands, hips, knees, ankles, and feet, overall, physical examinations throughout the record reflect mostly unremarkable findings, indicating . . . no joint or muscle tenderness." (TR. 23). The Court does not find the ALJ's findings regarding the presence of joint and muscle tenderness are incorrect or inconsistent. Instead, in summarizing the evidence, the ALJ simply noted that some treatment records noted tenderness, but many of the physical examinations noted no joint or muscle tenderness. In her reply brief, Plaintiff notes that her impairments are episodic in nature. (ECF No. 16:6). But that is exactly what the ALJ's recitation of the evidence suggests—some records note tenderness, some do not.

Finally, Plaintiff asserts the ALJ improperly discredited her reports of symptoms on the basis of receiving conservative treatment.[3] (ECF No. 11:14). She contends it is "obvious" that her impairments—primarily systemic lupus erythematous, rheumatoid arthritis, chronic pain syndrome, and fibromyalgia—have no cure via nonconservative measures. (ECF No. 11:14). But Plaintiff cites no authority in support of this proposition and the Commissioner rightly notes that Plaintiff suffered from other conditions—wedge compression fracture of first lumbar vertebra, degenerative disc disease, and bilateral carpal tunnel syndrome. (ECF No. 15:12; TR. 17).

Plaintiff also contends that "despite compliance with numerous rheumatologic and pain management therapies, she failed to improve." (ECF No. 11:14). In support, she asserts that Dr. Blick concluded that conservative treatment failed, Plaintiff's pain was uncontrolled, and she was at risk for returning to the emergency room for pain control. (ECF No. 11:14) (citing TR. 1345, 1351). The content of the medical report, however, does not support Plaintiff's framing. Dr. Blick wrote that Plaintiff's "pain is severe, requiring an injection, otherwise patient is at risk of presenting to the emergency room for appropriate pain control" and that Plaintiff "has tried conservative treatments including exercise and over the counter medicines and they did not control the pain." (TR. 1345). But in the same report, Dr. Blick also wrote that "medications allow patient to increase daily activity, medications have allowed the patient to increase their quality of life,

---

[3] The ALJ wrote: "[T]he record demonstrates the claimant received mostly conservative treatment for her physical impairments, including prescription medication, such as Sulfasalazine, Cyclobenzaprine, and Lisinopril, physical therapy, use of a TENS unit, and injections, and that this treatment was generally effective."

11

medications allow the patient to perform tasks not otherwise possible." (TR. 1345). Further, after the injections—which the ALJ considered to be part of a conservative treatment regimen—Plaintiff had greater than 90% relief for more than 24 hours. (TR. 1351). Thus, Dr. Blick's record does not show that conservative treatment—as defined by the ALJ—failed or that Plaintiff's conditions were not well managed.[4]

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on this review, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on February 29, 2024.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiff also complains that the ALJ's analysis regarding conservative treatment is vague and boilerplate. (ECF No. 16:4). But the ALJ explained what he considered to be conservative treatment and how that treatment was effective. Thus, this argument is also without merit.